STEPHANIE YONEKURA
Acting United States Attorney
SANDRA R. BROWN
Assistant United States Attorney
Chief, Tax Division
        300 North Los Angeles Street
        Los Angeles, California  90012
        Telephone: (213) 894-5810
        Facsimile: (213) 894-0115
        E-mail: Sandra.Brown@usdoj.gov
CHRISTOPHER S. STRAUSS
Trial Attorney (LA Bar No. 28770)
ELLEN M. QUATTRUCCI
Trial Attorney (DC Bar No. 462103)
Tax Division, Western Criminal Enforcement Section
United States Department of Justice
        601 D. St. NW, Room 7022
        Washington, D.C. 20004
        Telephone: (202) 514-5762
        Facsimile: (202) 514-9623
        E-mail: Christopher.S.Strauss@usdoj.gov
                Ellen.M.Quattrucci@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 11-00930(B)- TJH |
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date: December 9, 2014 |
| DAVID KALAI, and NADAV KALAI, | Time: 10:00 a.m. |
| Defendants. | |

        Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and the Tax Division of the United States Department of Justice, hereby submits its trial memorandum for the above-captioned case.

## I.   __CASE STATUS__

A.   Trial is scheduled to begin on December 9, 2014, before the Honorable Terry J. Hatter, Jr., United States District Judge.

B.   The government's case-in-chief is estimated to be five days in length.

C.   The Second Superseding Indictment charges DAVID KALAI ("D. KALAI") and NADAV KALAI ("N. KALAI")with conspiring to defraud the United States in violation of 18 U.S.C. §371.  D. KALAI is also charged in Counts Two and Three with Willfull Failure to File a Report of Foreign Bank and Financial Accounts ("FBAR") for calendar years 2008 and 2009, in violation of 31 U.S.C. §§ 5314, 5322(a).  N. KALAI is charged in Counts Four and Five with the same crime for calendar years 2008 and 2009.  The government expects to call approximately 16 witnesses in its case-in chief.[1]  Neither party will call an expert witness.

D.   Defendants D. KALAI and N. KALAI are each on bond pending trial.  Defendant DAVID ALMOG never appeared in the case and is a fugitive.

E.   Trial by jury has not been waived.

F.   An interpreter is not needed.

G.   Stipulations Agreed To In Parties Joint Brief Regarding Motions In Limine (Docket Entry No. 184)

      1.   During its case-in-chief, the government intends to offer into evidence e-mails authored by David Kalai.  Counsel for David

---

[1]In denying defendants D. KALAI and N. KALAI's Motion For Order Authorizing Foreign Deposition of Dan Meiri, the Court ruled that, in light of the government's unequivocal statements that it does not intend to call Robert Sandlin as a witness, the government is precluded from calling Robert Sandlin as a witness in its case-in-chief.  Robert Sandlin will not be called as a witness by the government in its case-in-chief.

Kalai has advised the government that he will not object to the introduction of these emails into evidence on the basis that there is a lack of foundation that they are, in fact, statements of David Kalai.

2.   The government agreed that it would not elicit in its case-in-chief testimony that defendant N. KALAI stole approximately $642,000 from Alexei Iazlovsky as set forth in the government's Notice of Intent to Introduce Inextricably Intertwined Evidence or, Alternatively, Evidence Pursuant to Fed. R. Evid. 404(b).

3.   The parties intend to enter into a stipulation that bank records from Wells Fargo Bank, Bank Leumi USA, Bank Leumi Luxembourg and Bank Leumi Israel may be admitted into evidence without the necessity of establishing a foundation of authenticity or identification, and that those documents constitute the records of regularly conducted activities of the business referred to and are therefore admissible into evidence as exceptions to the hearsay rule under provisions of Federal Rule of Evidence 803(6).  The defendants have advised the government that they reserve objections on all other grounds, such as relevance and hearsay within such business records.

H.   Redaction of Trial Exhibits

Pursuant to Federal Rule of Criminal Procedure 49.1, on the first day of trial, subject to guidance from the Court, the government intends to take the following steps to protect personal information of third parties contained in the government's trial exhibits:

1.   The government will provide the Court and defense counsel with a redacted set of the government's trial exhibits.

2.   The government will have available in the courtroom two unredacted sets of the government's trial exhibits in the unlikely event the witness needs to review an unredacted copy of an exhibit.

3.   The original trial exhibits will contain

3

redacted documents.  The jury will never have access to the protected personal information contained in the government's trial exhibits.

I.   Pretrial Motions

There was significant motions practice prior to the transfer of this case.  The government has summarized the Court's evidentiary rulings in Section IV.

II.   **THE INDICTMENT**

On October 17, 2013, a federal grand jury in the Central District of California returned a Second Superseding Indictment charging D. KALAI and N. KALAI with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. The Second Superseding Indictment alleges that defendants D. KALAI and N. KALAI, among others, conspired to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service, in the ascertainment, computation, assessment, and collection of income taxes.  Second Superseding Indictment at ¶ 21.

From at least April, 2000 until in or about 2010, as officers and/or tax preparers of United Revenue Service, Inc. ("URS"), defendants D. KALAI, N. KALAI, and DAVID ALMOG, along with un-indicted co-conspirator Robert Sandlin took steps to help their URS clients form offshore shell corporations and then advised the clients to establish undeclared bank accounts, using the shell corporations as named account holders, at Bank Leumi (Luxembourg) S.A.("Bank Leumi, Luxembourg") and Bank Hapoalim (Suisse) S.A. in Luxembourg ("Bank Hapoalim, Luxembourg").  The co-conspirators prepared false corporate and partnership tax

4

returns on behalf of their clients, which falsely reported money
sent to the undeclared bank accounts as investment losses and/or
business expenses.  The co-conspirators prepared false individual
income tax returns that underreported the clients' true income
and failed to disclose the existence of the clients' undeclared
bank accounts at Bank Leumi and Bank Hapoalim in Luxembourg.  In
order to ensure that the accounts remained concealed from the
IRS, the co-conspirators caused their clients to fail to file
FBARs

Counts Two and Three charge defendant D. KALAI with
willful failure to file an FBAR in violation of 31 U.S.C. §§ 5314
and 5322(a) concerning an account held at Bank Leumi, Luxembourg
in the name of Anack Ltd.  Defendant N. KALAI is also charged in
Counts Four and Five with willful failure to file an FBAR, in
violation of 31 U.S.C. §§ 5314 and 5322(a), concerning his
financial interest in the Anack Ltd. account.

III.   **STATEMENT OF FACTS**

A.   United Revenue Service Inc.

D. KALAI, and his son N. KALAI, operated a tax return
preparation business called United Revenue Service, Inc. ("URS")
with offices across the United States.  URS had locations in Los
Angeles, California;  Santa Clara, California; San Diego,
California; Seattle, Washington; Dallas, Texas; St. Louis,
Missouri; Chicago, Illinois; Boston, Massachusetts; New York, New
York; and Atlanta, Georgia.  At various times between 2000 and
2010, URS had its headquarters in Newport Beach, California;
Costa Mesa, California; and Bethesda, Maryland.

1          B.    The Defendants And Their Co-Conspirators

2           Defendant D. KALAI established URS in or about 1988 and

3    also worked at URS as a tax return preparer. D. KALAI prepared

4    and filed tax returns for high-net worth clients until at least

5    2008.  Defendant D. KALAI worked primarily at URS headquarters in

6    Newport Beach, California, and later, at URS's location in Costa

7    Mesa, California. Defendant N. KALAI worked for URS as a tax

8    return preparer from 2001 until the business closed in 2011.

9    Defendant N. KALAI worked primarily at URS's headquarters in

10   Bethesda, Maryland, but would travel to the URS locations in

11   Newport Beach, California, and Costa Mesa, California during tax

12   season to prepare returns. Defendants D. KALAI and N. KALAI were

13   Israeli citizens who subsequently became naturalized citizens of

14   the United States in 1994.

15          ALMOG was a tax return preparer employed by URS in its New

16   York office.  ALMOG began working for URS in or about 2001.  In

17   2006, defendant ALMOG was the branch manager of URS's New York

18   office and a supervisor of tax return preparers at URS's East

19   Coast locations.  Unindicted co-conspirator Robert Sandlin was a

20   URS tax return preparer from 2000 until early 2006.  Robert

21   Sandlin worked out of the Newport Beach, California URS

22   headquarters, located in the Central District of California.

23          C.    The Scheme

24           D. KALAI and N. KALAI along with Robert Sandlin and ALMOG

25   implemented a scheme to fraudulently reduce taxes for URS' high-

26   net-worth clients through the use of offshore bank accounts and

27   offshore nominee entities that were named as the bank account

28   holder.  The scheme involved three steps: First, the co-

                                    6

conspirators would establish an offshore corporation in Belize or the British Virgin Islands for the client.  Second, the co-conspirators would assist the client with opening an offshore bank account in the name of the offshore corporation to conceal its existence from U.S. taxing authorities.  Third, the co-conspirators would prepare and file false individual and corporate tax returns that claimed false expenses, omitted income or claimed fabricated investment losses.

1.     Creating the Offshore Corporation

In most instances, the clients relied on URS to assist them with establishing the offshore corporation.  Other times, the foreign bank would perform this service for the client. Specifically, URS used the services of WestGlobe, Inc. ("WestGlobe") to set-up the offshore corporations in Belize.  One URS employee, a tax administrator, would help the clients complete the paperwork, courier the paperwork to WestGlobe, and invoice the clients for Westglobe's services. She kept a list of offshore corporations opened upon the recommendation of URS; the list is eight pages long and identifies eighty-nine offshore corporations.  Each of the clients the government intends to call at trial is identified on this offshore corporation list.

2.     Opening the Foreign Bank Account

The foreign bank accounts were opened at either Bank Leumi, Luxembourg or Bank Hapoalim, Luxembourg with the assistance of the co-conspirators.  But for an introduction from D. KALAI, or another tax prepare at URS, these clients would not have been able to open a foreign account. Indeed, in late 2002, and again in 2004, D. KALAI attempted to negotiate a referral

7

1  contract with Bank Leumi, Luxembourg.  As part of the contract,

2  D. KALAI sought to be compensated for the clients he referred to

3  Bank Leumi, Luxembourg.  Although the contract was not executed,

4  Bank Leumi's records indicate that D. KALAI was a referral agent

5  of the bank and was assigned a service code that tracked the

6  deposits associated with customers he, and others at URS,

7  referred to Bank Leumi, Luxembourg.  A bank account would be

8  opened in the name of the offshore corporation in order to

9  conceal the account from the IRS.  Neither Bank Leumi nor Bank

10 Hapoalim would report the existence of the account to the IRS.

11          3.    Preparing and Filing False Tax Returns

12      D. KALAI, N. KALAI and the other co-conspirators would

13 then prepare and file tax returns that falsely reduced the

14 client's taxable income.  Depending upon the client's situation

15 and circumstances, the co-conspirators prepared false returns

16 that fell into three basic categories.   The co-conspirators

17 would offset high net-worth clients' reported income by claiming

18 false flow through losses from a partnership or subchapter S

19 corporation.  The transfers offshore would be characterized as

20 "Outside Services" or "Information Acquisition Costs," in order

21 to falsely reduce the client's taxable income.

22      When a client earned income from a foreign sources – such

23 as sales to overseas vendors or the sale of a corporation located

24 in Israel, the income was simply omitted from the client's tax

25 returns.  The income diverted to the foreign bank account was

26 left off the tax return and no U.S. income tax was paid

27 concerning that income.

28      The third variation of the scheme concerned creating false

losses to reduce taxable income.  D. KALAI, N. KALAI, Sandlin, or ALMOG determined or estimated what the client's legitimate potential tax liability would be for a particular year during tax planning sessions.  The co-conspirators then offered to create a loss for clients by transferring money from the client to one of three business accounts controlled by the Sandlin at Wells Fargo Bank in the names of Platinum Planning Group, Global Securities, and Transnet Asset Management.  After receiving the client's money, Sandlin subsequently transferred the money from the Wells Fargo bank accounts into the foreign account held in the name of the offshore corporation.   On paper,it appeared as though the client had "lost" money in a bad investment through Platinum Planning Group.  In reality, the funds were safe in the foreign bank accounts and the URS clients had total control over those funds.  False losses were then claimed on the URS client's federal income tax returns.  In turn, the false loss flowed through to the clients' individual tax return falsely reducing their taxable income.

The seven clients set to testify in this case shuffled over $20 million offshore to evade the payment of approximately $7 million in taxes.

**IV.   ELEMENTS OF CHARGED OFFENSES**

A.   Conspiracy to Defraud the United States

Count One of the Second Superseding Indictment charges that defendants conspired together, and with others, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of the IRS in the ascertainment, computation, assessment, and

collection of taxes.  This type of conspiracy is commonly
referred to as a <u>Klein</u> conspiracy.  <u>United States v. Klein</u>, 247
F.2d 908 (2d Cir. 1957).

     In order to prove the crime of conspiracy to defraud the
United States charged in Count One, the government must prove
three elements.  First, there was an agreement between two or
more persons to defraud the United States by impeding, impairing,
obstructing, or defeating the lawful functions of the Internal
Revenue Service by deceitful or dishonest means.  Second, the
defendant became a member of the conspiracy knowing of its object
and intending to help accomplish it.  And third, one of the
members of the conspiracy performed at least one overt act for
the purpose of carrying out the conspiracy.  <u>United States v.</u>
<u>Meredith</u>, 685 F.3d 813, 923 (9th Cir. 2012; <u>United States v.</u>
<u>Caldwell</u>, 989 F.2d 1056, 1059 (9th Cir.1993).

     B.   Willful Failure to File FBARs

     In order to prove the crime of willful failure to file
reports of foreign bank and financial accounts charged in Counts
Two through Five, the government must prove: (1) the defendant
was a resident or citizen of the United States or a person in,
and doing business in, the United States during the charged
calendar year; (2) the defendant had a financial interest in, or
signature or other authority over, a bank, securities, or other
financial account in a foreign country during the calendar year
specified in the count; (3) the aggregate value of the foreign
financial account exceeded $10,000 during the calender year; and
(4) the defendant willfully failed to file a report of foreign
bank and financial accounts on or before June 30 of the year

following the calendar year specified.  31 U.S.C. §§ 5314,
5322(a); 31 C.F.R. §§ 103.24 (filing requirement), 103.27 (June
30 filing deadline, value exceeding $10,000); Report of Foreign
Bank and Financial Account, Form TD F 90-22.1 (October 2008 rev.)

### 1.    Foreign Country

The term "foreign country" includes all geographical areas
located outside the United States. The geographical location of
the account, not the nationality of the financial entity
institution in which the account is found determines whether it
is an account in a foreign country.  Report of Foreign Bank and
Financial Account, Form TD F 90-22.1 (October 2008 rev.), General
Instructions (containing definitions); United States v. Kerr,
2013 WL 4430917 at *7 (D. Ariz.) (unpublished) (holding that
definitions set forth in the Form TD F 90-22.1 are based upon the
federal regulations and are an appropriate source for jury
instructions).

### 2.    Financial Interest

A United States person has a financial interest in each
account for which such person is the owner of record or has legal
title, whether the account is maintained for his or her own
benefit or for the benefit of others including non-United States
persons.  Report of Foreign Bank and Financial Account, Form TD F
90-22.1 (October 2008 rev.), General Instructions (containing
definitions); United States v. Kerr, 2013 WL 4430917 at *7 (D.
Ariz.) (unpublished) (holding that definitions set forth in the
Form TD F 90-22.1 are based upon the federal regulations and are
an appropriate source for jury instructions)

### 3.    Signature Authority

A person has "signature authority" over an account if such person can control the disposition of money or other property in it by delivery of a document containing his signature to the bank or other person with whom the account is maintained. Report of Foreign Bank and Financial Account, Form TD F 90-22.1 (October 2008 rev.), General Instructions (containing definitions); <u>United States v. Kerr</u>, 2013 WL 4430917 at *7 (D. Ariz.) (unpublished) (holding that definitions set forth in the Form TD F 90-22.1 are based upon the federal regulations and are an appropriate source for jury instructions)

### 4.    Other Authority

"Other authority" exists in a person who can exercise comparable power over an account by communication to the bank or other person with whom the account is maintained, either directly or through an agent, nominee, attorney, or in some other capacity on behalf of the U.S. person, either orally or by some other means.  Report of Foreign Bank and Financial Account, Form TD F 90-22.1 (October 2008 rev.), General Instructions (containing definitions); <u>United States v. Kerr</u>, 2013 WL 4430917 at *7 (D. Ariz.) (unpublished) (holding that definitions set forth in the Form TD F 90-22.1 are based upon the federal regulations and are an appropriate source for jury instructions)

### 5.    Willfully

In order to prove that the defendant "willfully" failed to file an FBAR, the government must prove beyond a reasonable doubt that each defendant knew federal law imposed a duty on him to file an FBAR", and that each defendant intentionally and

12

voluntarily violated that duty.  <u>Cheek v. United States</u>, 498 U.S.
192, 201 (1991) ("Willfulness, as construed by our prior
decisions in criminal tax cases, requires the Government to prove
that the law imposed a duty on the defendant, that the defendant
knew of this duty, and that he voluntarily and intentionally
violated that duty."); <u>United States v. Sturman</u>, 591 F.2d 1466,
1476 (6th Cir. 1991) (willfulness applies to FBAR violations);
<u>see also</u> <u>United States v. Meredith</u>, 685 F.3d 814, 826 (9th Cir.
2012) ("Any voluntary act committed with the specific intent to
disobey or disregard the law qualifies as willfulness")

## V.   **LEGAL AND EVIDENTIARY ISSUES**

    A.   The Court's Order on the Motions in Limine

      On July 22, 2013, the parties filed a Joint Brief
Regarding Motions In Limine concerning certain evidentiary
issues.  The government filed one motion to admit certain
customer profile documents.  Defendants D. KALAI and N. KALAI
filed two motions in limine and a separate motion to preclude the
introduction of evidence outlined in the Government's Notice of
Intent to Introduce Inextricably Intertwined Evidence or,
Alternatively, Evidence Pursuant to Federal Rule of Evidence
404(b).  (Docket Entry No. 177.)

      After the pretrial conference, the Court issued a written
order resolving the pre-trial motions.  The Court's Order is
attached hereto as Exhibit A and summarized in the following
bullet points:

            1.   The "referral information" in the Customer
Profiles is not admissible without additional
foundation evidence.  In order to be
admissible under the business records
exception to the hearsay rule, the Bank Leumi
records foundational witness must provide a

13

sufficient showing of the existence of a verification policy or procedures concerning the "referral information."

2.  The Bank Hapoalim Know Your Customer Statement concerning witness M.N. is not admissible at trial.

3.  The 1999 felony drug possession of co-conspirator Robert Sandlin is not admissible at trial.

4.  The 2011 wire fraud conviction of co-conspirator Robert Sandlin is admissible to the extent defendants seek to introduce the conviction itself and facts related to Sandlin's misappropriation of funds from witness M.W.

5.  Defendant D. KALAI is not permitted to impeach the credibility of Robert Sandlin by introducing: (a) Sandlin's Enrolled Agent Application; or (b) testimony from an IRS Official that the application was filed under penalties of perjury because the proffered evidence is extrinsic evidence to prove a specific instance of dishonesty, and therefore, prohibited by Fed. R. Evid. 608(b).

6.  Defendant D. KALAI is not permitted to impeach the credibility of Robert Sandlin by introducing the following statements that he made to federal law enforcement agents: (a) he continued to prepare false tax returns after he left URS; or (b) his admission that he was not truthful in a prior interview with law enforcement.  The proffered evidence is "classic hearsay evidence." Because Robert Sandlin appears to be available as a witness, the evidence is not admissible under Fed. R. Evid. 807.

7.  Evidence that Defendants D. KALAI and N.KALAI had ownership of and authority over undeclared foreign accounts is highly probative of (i) defendants intent to engage in the charged conspiracy; and (ii) the absence of mistake or miscommunication about whether the clients' accounts must be disclosed, and therefore, is admissible under

14

Federal Rule of Evidence 404(b)[2].

    8.    Evidence of other false items on the tax returns of the clients in the First Superseding Indictment, such as "false amortization expenses" are inextricably intertwined with the charged conspiracy, and therefore, admissible at trial.

B.    The Court's Order on the Defendant D. KALAI's Motion to Sever/Defendant N. KALAI's Motion To Exclude Evidence (Docket No.174)

The Court made two additional evidentiary rulings in connection with defendant D. KALAI's Motion to Sever and defendant N. KALAI's Motion to Exclude Evidence.

    1.    The evidence of destruction of documents is admissible against defendant N. KALAI.

    2.    Evidence of document destruction by co-conspirator D. ALMOG is not admissible in the trial of D. KALAI and N. KALAI.

The Court's Order is attached hereto as Exhibit B.

C.    Evidence and Argument Concerning D. KALAI's Mental Or Physical Health Are Not Proper at Trial

Defendant D. KALAI appears to argue that issues such as defendant's age, health and family circumstances are proper for juror's to consider in this case. See Objections to Government's Proposed Voir Dire at 3.  Defendant further argues that defendant's "ability to perceive facts or recall information" may somehow be relevant to the jury's deliberations.  These issues were litigated as part of the competency proceedings before the Court and have no relevance to the jury's determination of

---

[2]Subsequent to this ruling, a second superseding indictment charging both D. KALAI and N. KALAI with Willful Failure to File FBARs for calendar years 2008 and 2009 was returned by the grand jury.  Therefore, this evidence is no longer subject to Rule 404(b).  The evidence is direct evidence of the conduct charged in Counts Two through Five.

defendant's mental state at the time of the offense. Accordingly, such evidence and argument is not relevant and should not be presented to the jury at trial.

D.   Agency Statements

A statement is not hearsay if the statement is offered against a party and is a statement by the party's agent concerning a matter within the scope of the agency or employment made during the existence of the relationship. Fed. R. Evid. 801(d)(2)(D). The existence of an agency relationship is a question for the judge under Rule 104(a) and must be proved by substantial evidence. Hilao v. Estate of Marcos, 103 F.3d 767, 775 (9th Cir. 1996).

The fact of an agency can be proved by the alleged agent's extrajudicial statements. That is, the Court may consider an out of court statement in making its Rule 104(a) determination of the admissibility of a statement under Rule 801(d)(2)(D). Hilao, 109 F.3d at 775. Here, the government intends to introduce statements (in the form of email correspondence and letters) made by URS employees on behalf of defendant D. KALAI.

Specifically, in the process of negotiating a referral agreement with Bank Leumi, Luxembourg, two URS employees corresponded on behalf of D. KALAI in the course of their duties as employees of URS. In the first piece of correspondence, defendant D. KALAI advised a Bank Leumi, Luxembourg banker that he wanted to refer two URS clients to the bank and sought a one-time referral fee of 1% of the deposits. This e-mail correspondence is on the URS email system and was sent by the Corporate Administrative Manager of URS. Similarly, in a second

16

letter, written on URS letterhead, defendant D. KALAI proposed
terms to be added and deleted to a referral agreement with Bank
Leumi, Luxembourg.  These statements were made by another URS
employee and provide URS emails and phone numbers to engage in
future contacts,  These statements are admissible because they
are statements by a party's agent.

E.   Co-Conspirator Statements

Under Fed. R. Evid. 801(d)(2)(E), a statement is not
hearsay if it is "a statement made by a co-conspirator of a party
during the course or in furtherance of the conspiracy."  For Rule
801(d)(2)(E) to apply it is not necessary that the declarant be
charged with the crime of conspiracy; any "concert of action
creates a conspiracy for purposes of the evidence rule."  United
States v. Portac, Inc., 869 F.2d 1288, 1294 (9th Cir. 1989).

For a statement to be admissible under Rule 801(d)(2)(E),
the offering party must establish that: (1) the statement was in
furtherance of the conspiracy or scheme; (2) it was made during
the life of the conspiracy or scheme; (3) the defendant and
declarant were members of the conspiracy or scheme.  See
Bourjaily v. United States, 483 U.S. 171, 175 (1987).  It is not
necessary that the defendant have been present at the time the
statement was made.  Sandejas v. United States, 438 F.2d 1040,
1045 (9th Cir. 1970).  The declaration itself, together with
independent evidence, may constitute sufficient proof of the
existence of the conspiracy and the involvement of defendant and
the declarant in it.  Bourjaily, 483 U.S. at 181.

The district court may admit statements under Rule
801(d)(2)(E) provided that it does not abuse its discretion.

17

1   <u>United v. Bowman</u>, 215 F.3d 951, 960-61 (9th Cir. 2000).  The

2   district court may find that statements were made in furtherance

3   of the conspiracy provided that its factual findings are not

4   clearly erroneous.  <u>Id.</u>

5       F.   Instructions

6        Instructions, directives and questions are not hearsay

7   because such statements are not offered for the truth of the

8   matters asserted.  Such communications contain no declaration of

9   fact capable of being proven true or false. <u>United States v.</u>

10  <u>Chung</u>, 659 F.3d 815, 833(9th Cir. 2011); <u>United States v. Reilly</u>,

11  33 F.3d 1396, 1410 (3d Cir.1994) ("Instructions to an individual

12  to do something are ... not hearsay ... because they are not

13  declarations of fact and therefore are not capable of being true

14  or false.").

15      G.   Business Records

16       The government will seek to admit evidence as business

17  records of Bank Leumi, Luxembourg through a custodian of records.

18  Business records are not normally self-proving.  For the records

19  to be admissible, the following foundational facts must be

20  established through the custodian of the records or another

21  qualified witness: (1) the records must have been made or

22  transmitted by a person with knowledge at or near the time of the

23  incident recorded; and (2) the record must have been kept in the

24  course of regularly conducted business activity.  <u>United States</u>

25  <u>v. Ray</u>, 930 F.2d 1368, 1370 (9th Cir. 1990), <u>as amended on denial</u>

26  <u>of rehearing</u> (9th Cir. 1991); <u>Kennedy v. Los Angeles Police</u>

27  <u>Dept.</u>, 901 F.2d 702, 717 (9th Cir.1990).  "The phrase 'other

28  qualified witness' is broadly interpreted to require only that

    the witness understand the record-keeping system."  <u>Id.</u>  <u>United</u>

1  States v. Franco, 874 F.2d 1136, 1139-40 (7th Cir.1989); United

2  States v. Hathaway, 798 F.2d 902, 906 (6th Cir.1986).

3       There is no requirement that the government establish when

4  and by whom the documents were prepared. United States v. Huber,

5  772 F.2d 585, 591 (9th Cir. 1985) ("there is no requirement that

6  the government show precisely when the [record] was compiled");

7  United States v. Basey, 613 F.2d 198, 201 n. 1 (9th Cir.1979)

8  (college records properly admitted to establish defendant's

9  address even though the custodian did not herself record the

10  information and did not know who did), cert. denied, 446 U.S. 919

11  (1980). "All that the rule requires is that the document be made

12  'at or near the time' of the act or event it purports to record."

13  Huber, 772 F.2d at 591.

14  **VI.**   **CONCLUSION**

15       The government requests leave to file such additional

16  memoranda as may become appropriate during the course of the

17  trial.

18

19  DATED: December 7, 2014          Respectfully submitted,

20                                   STEPHANIE YONEKURA
                                     Acting United States Attorney
21
                                     SANDRA R. BROWN
22                                   Assistant United States Attorney
                                     Chief, Tax Division
23

24                                   */s Christopher S. Strauss*
                                     */s Ellen M. Quattrucci*
25                                   CHRISTOPHER S. STRAUSS
                                     ELLEN M. QUATTRUCCI
26                                   Trial Attorneys
                                     U.S. Department of Justice, Tax
27                                   Division
                                     Attorneys for Plaintiff
28                                   UNITED STATES OF AMERICA